UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mohamad Tlaib, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>   - against -<br><br>Chattem, Inc.,<br><br>      Defendant | 1:23-cv-00376<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Chattem, Inc. ("Defendant") manufactures, labels and sells "Soothing Mint" dry mouth lozenges promoted for "Sooth[ing] Dry Mouth," "Moisturizing Mouth Tissue" and "Freshen[ing] Breath" under the ACT brand ("Product").



**I. DRY MOUTH OR XEROSTOMIA**

2. Saliva is an essential substance that reduces the incidence and severity of carious

lesions and dental erosion.

3. Saliva neutralizes acids and promotes clearance by swallowing and provides calcium and phosphate ions to the oral area.

4. Dry mouth or xerostomia is characterized by partial or total loss of saliva production caused by the hypofunction of the salivary glands, affecting about 25% of the population.

5. The causes include (1) side effects of multiple medications, (2) autoimmune diseases, (3) head and neck irradiation and (4) systemic cancer therapy.[1]

6. Xerostomia significantly increases the risk of dental caries, demineralization, tooth sensitivity, dental erosion, candidiasis, and other oral diseases.

7. The problem is particularly acute as the population ages, consuming a greater number of medications with side effects of dry mouth while retaining their natural teeth due to increased focus on oral disease prevention.

## II. ORAL MOISTURIZERS

8. To alleviate symptoms of dry mouth, oral moisturizers stimulate saliva production and provide lubricating effects, increasing comfort and preventing dental erosion and caries.

9. However, it is essential these products do not have pH values below the critical pH of enamel or root dentin, the pH below which tooth structure begins to erode.

10. Studies have reported the critical pH of dentin in a range between 6 and 6.9.

11. Recent publications in dental journals have highlighted the danger of acidic oral moisturizers, and concluded such products should be formulated to have an acidity level of about 6.7 pH or higher, to avoid contributing to demineralization, dental erosion, sensitivity, and caries.

---

[1] Estimates are that 63% of the 200 most common medications have a xerogenic effect, resulting in reduced salivary flow rates.

12. Laboratory testing based on titratable acidity using a pH meter, pH indicator and gravimetric analysis concluded the Product's pH of 5.72 was below the critical pH of tooth enamel and root dentin.

13. In light of the Product's pH, it is misleading to market it to persons suffering from dry mouth because it will have a detrimental effect on oral health.

14. The Product fails to inform purchasers of the likelihood of demineralization, dental erosion, sensitivity, and caries.

## Jurisdiction and Venue

15. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

16. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

17. Plaintiff is a citizen of Illinois.

18. Defendant is a citizen of Tennessee.

19. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

20. The members of the classes Plaintiff seek to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across the States covered by the proposed classes.

21. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase and use of the Product, reliance on the representations, and/or subsequent

awareness they were false and misleading.

## Parties

22. Plaintiff Mohammad Tlaib is a citizen of Orland Hills, Cook County, Illinois.

23. Defendant Chattem, Inc. is a Tennessee corporation with a principal place of business in Chattanooga, Hamilton County, Tennessee.

24. Defendant owns the ACT brand of oral care products, a leader in innovative oral treatments.

25. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including Walgreens, 7960 W 159th St, Orland Park, Illinois, 60462, between 2021 and 2023, among other times.

26. Plaintiff expected the Product would improve the symptoms of dry mouth.

27. Plaintiff read the statements on the label.

28. Plaintiff did not know or expect the Product's pH meant it contributed to demineralization, dental erosion, sensitivity, and caries, oral care conditions of significance.

29. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $6.99 per 36 lozenges, excluding tax and sales.

30. Plaintiff bought the Product at or exceeding the above-referenced price.

31. Plaintiff paid more for the Product, would have paid less or not have purchased it had he known the representations and omissions were false and misleading.

32. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

33. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

34. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition, and that it's pH level will not render it harmful.

35. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other dry mouth products, because he is unsure whether those representations are truthful.

36. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other dry mouth relief products.

## Class Allegations

37. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and
>
> **Consumer Fraud Multi-State Class**: All persons in the States of Utah, North Dakota, Kansas, Mississippi, Arkansas, Alaska, Wyoming and South Carolina who purchased the Product during the statutes of limitations for each cause of action alleged.

38. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

39. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

40. Plaintiff is an adequate representative because his interests do not conflict with other members.

41. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

42. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

43. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

44. Plaintiff seeks class-wide injunctive relief because the practices continue.

## Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*

45. Plaintiff incorporates by reference all preceding paragraphs.

46. Plaintiff purchased the Product to improve oral health and did not expect it would be formulated to negatively affect oral health.

47. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Violation of State Consumer Fraud Acts (Consumer Fraud Multi-State Class)

48. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

49. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

50. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

## Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

51. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would improve oral health and not negatively affect oral health.

52. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

53. Defendant knew the product attributes that potential customers like Plaintiff were seeking, including dry mouth relief, increased saliva production, and moisturizing, and developed its marketing and labeling to directly meet their needs and desires.

54. The representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant it would improve oral health and did not expect it would be formulated to negatively affect oral health.

55. Defendant's representations affirmed and promised that the Product would improve oral health and not negatively affect oral health.

56. Defendant described the Product so Plaintiff believed that it would improve oral health and did not expect it would be formulated to negatively affect oral health, which became part of the basis of the bargain that it would conform to its affirmations and promises.

57. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

58. This duty is based on Defendant's outsized role in the market for OTC oral care products and custodian of the ACT brand, which has helped alleviate oral conditions for decades.

59. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

60. Plaintiff provided or provides notice to Defendant, its agents, representatives,

retailers, and their employees that it breached the Product's warranties.

61. Defendant received notice and should have been aware of these issues due to complaints by consumers and third-parties, including regulators and competitors, to its main offices and through online forums.

62. The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

63. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would improve oral health and did not expect it would be formulated to negatively affect oral health.

64. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because he expected it would improve oral health and did not expect it would be formulated to negatively affect oral health, and he relied on its skill and judgment to select or furnish such suitable product.

Negligent Misrepresentation

65. Defendant had a duty to truthfully represent the Product, which it breached.

66. This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the custodian of the ACT brand, consistently rated by Americans as being the most trusted seller of OTC oral care products.

67. Defendant's representations regarding the Product went beyond the specific representations on its packaging and labels, as they incorporated its extra-labeling promises and commitments to quality it has been known for.

68. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

69. The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

70. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

71. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it would improve oral health and did not expect it would be formulated to negatively affect oral health.

72. The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity or deception, through statement and omission, of the representations.

### Unjust Enrichment

73. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the classes;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary, statutory and/or punitive damages and interest;

4. Awarding costs and expenses, including reasonable attorney and expert fees; and

5. Other and further relief as the Court deems just and proper.

Dated:   January 23, 2023

                                                Respectfully submitted,

                                                /s/ Spencer Sheehan
                                                Sheehan & Associates, P.C.
                                                60 Cuttermill Rd Ste 412
                                                Great Neck NY 11021
                                                (516) 268-7080
                                                spencer@spencersheehan.com