**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Mohamad Tlaib, individually and on behalf of all others similarly situated, Plaintiff, | 1:23-cv-00376 |
| | Hon. Robert W. Gettleman |
| - against - | First Amended Class Action Complaint |
| Chattem, Inc., Defendant | Jury Trial Demanded |

Plaintiff Mohamad Tlaib alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Chattem, Inc. ("Defendant") manufactures dry mouth lozenges, with a front label stating "Soothes Dry Mouth," "Moisturizes Mouth Tissue" and "Freshens Breath," with a picture of a lozenge next to the splashing of water under the ACT brand ("Product").




2. Dry mouth lozenges are intended for purchase and use by those affected by xerostomia, or hypofunction of the salivary glands.

3. This condition renders the mouth unable to produce saliva, an extracellular bodily fluid comprised of 99 percent water.

4. Saliva plays a significant role in oral health, by (1) washing away food and debris from teeth and gums, (2) neutralizing acids and (3) providing high levels of calcium, fluoride and phosphate ions at the tooth surface.

5. The causes of dry mouth include (1) autoimmune diseases, (2) side effects of multiple medications, (3) head and neck irradiation and (4) systemic cancer therapy.[1]

6. The absence of saliva significantly increases the risk of dental caries, demineralization, tooth sensitivity, dental erosion, candidiasis, and other oral diseases.

7. The ACT dry mouth lozenge is marketed towards the one-quarter of the population suffering from this condition, shown by the labeling statements that it "Soothes Dry Mouth," "Moisturizes Mouth Tissue" and "Freshens Breath," with a picture of a lozenge next to the splashing of water.

8. This type of oral moisturizer is intended to linger in the mouth as long as possible to relieve dry mouth symptoms, which is why the back label "Suggested Use" instructs to "Allow lozenge to slowly dissolve in mouth [and] Use as needed."

[1] Estimates are that 63% of the 200 most common medications have a xerogenic effect, resulting in reduced salivary flow rates.




9. The ACT dry mouth lozenges function by stimulating saliva production which provides lubricating effects, increasing comfort and in theory, preventing dental erosion and caries.

10. However, persons affected by dry mouth conditions are generally unable to produce enough saliva to dilute the ACT dry mouth lozenges.

11. In the context of oral moisturizers, recent academic studies have highlighted the dangers where the acidity level is not at roughly 6.7 pH or higher.

12. At a pH value below the critical pH of enamel or root dentin, in a range between 6 and 6.9, causes tooth structure begins to erode.

13. The result is that the lozenges will contribute to demineralization, dental erosion, sensitivity, and caries.

14. Delgado et al. performed laboratory testing on the Product based on titratable acidity ("TA") using a pH meter, pH indicator and gravimetric analysis. [2]

15. They determined that its pH of 5.72 was below the critical pH of tooth enamel and root dentin.

[2] Alex J. Delgado et al., Potential Erosive Assessment of Dry Mouth Lozenges and Tablets on Dentin, #0419, University of Florida College of Dentistry (laboratory testing based on titratable acidity using a pH meter, pH indicator and gravimetric analysis).

16. Statistical analysis was performed to confirm the correlation between pH and TA with dentin loss.

17. The dentin loss delta mean for the ACT lozenges was -0.0075 with a standard deviation of 0.004, which is consistent for products of high acidity.

18. pH values of solutions have been shown to be good indicators for the immediate erosive potential they have.

19. Along with titratable acidity, these are the most common markers used to determine erosive potential in the literature.

20. Delgado and Olafsson noted how labeling like appears on the ACT product, recommending they be use "as needed" "seem[s] counter-intuitive [because] [it is] [] acidic, considering the vulnerability of the target group to dental erosion and root caries."[3]

21. For this reason, they advise that "care should be taken to formulate these products with safe pH values for both enamel and root dentin which, based on specific formulation, should be around 6.7 or higher."

22. In light of the Product's acidity, it is misleading to market it to persons suffering from dry mouth because it will have a detrimental effect on oral health.

23. This is because it fails to disclose and omits the likelihood of demineralization, dental erosion, greater tooth sensitivity and higher incidences of dental caries.

---

[3] Delgado AJ, Olafsson VG. Acidic oral moisturizers with pH below 6.7 may be harmful to teeth depending on formulation: a short report. *Clin Cosmet Investig Dent*. 2017 Aug 3; 9:81-83; Delgado, Alex J., Vilhelm G. Olafsson, and Terence E. Donovan. "pH and erosive potential of commonly used oral moisturizers." *Journal of Prosthodontics* 25.1 (2016): 39-43; Delgado, A. J., Ribeiro, A. D., Quesada, A., Rodríguez, L. E., Hernández, R., Wynkoop, B., & Dilbone, D. A. (2018). Potential erosive effect of mouthrinses on enamel and dentin. *Gen Dent*, 66(3), 75-9; Delgado, Alex, et al. "Erosive assessment of dry mouth lozenges and tablets on enamel and dentin." *Journal of Dentistry* 105 (2021): 103496.

24. Dry mouth lozenges or discs exist which do not contribute to tooth loss and dental caries because they have pH levels of 8.0 or greater.

25. The Product unlawfully claims to "mitigate … disease" through its effects on salivary gland disorders using lay terminology, namely, "Moisturizes Mouth Tissue." 21 C.F.R. § 101.93(g)(2)(ii).

Jurisdiction and Venue

26. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

27. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

28. Plaintiff is a citizen of Illinois.

29. Defendant is a citizen of Tennessee.

30. The class of persons Plaintiff seek to represent includes persons who are citizens of different states from which Defendant is a citizen.

31. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described here from thousands of locations including grocery stores, dollar stores, drug stores, convenience stores, big box stores, and/or online, across this State.

32. Venue is in this District with assignment to the Eastern Division because a substantial part of the events or omissions giving rise to these claims occurred in Cook County, including Plaintiff's purchase and use of the Product, reliance on the representations, and/or subsequent awareness they were false and misleading.

Parties

33. Plaintiff Mohamad Tlaib is a citizen of Orland Hills, Cook County, Illinois.

34. Defendant Chattem, Inc. is a Tennessee corporation with a principal place of business in Chattanooga, Hamilton County, Tennessee.

35. Defendant owns the ACT brand of oral care products, a leader in innovative oral treatments.

36. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at stores including pharmacies in Cook County between 2021 and 2023, among other times.

37. Plaintiff expected the Product would improve the symptoms of dry mouth.

38. Plaintiff read the statements on the label.

39. Plaintiff did not know or expect the Product's pH meant it contributed to demineralization, dental erosion, sensitivity, and caries, oral care conditions of significance.

40. As a result of the false and misleading representations, the Product is sold at premium price, approximately not less than $6.99 per 36 lozenges, excluding tax and sales.

41. Plaintiff bought the Product at or exceeding the above-referenced price.

42. Plaintiff paid more for the Product, would have paid less or not have purchased it had he known the representations and omissions were false and misleading.

43. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

44. Plaintiff chose between this Product and others represented similarly, but which did not misrepresent their attributes, requirements, instructions, features, and/or components.

45. Plaintiff intends to, seeks to, and will purchase the Product again when he can do so

with the assurance its representations are consistent with its abilities, attributes, and/or composition, and that it's pH level will not render it harmful.

46. Plaintiff is unable to rely on the labeling and representations not only of this Product, but other dry mouth products, because he is unsure whether those representations are truthful.

47. If Defendant's labeling were to be truthful, Plaintiff could rely on the labeling of other dry mouth relief products.

Class Allegations

48. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged.

49. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

50. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

51. Plaintiff is an adequate representative because his interests do not conflict with other members.

52. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

53. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

54. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

55. Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, *et seq.*

56. Plaintiff incorporates by reference all preceding paragraphs.

57. Plaintiff purchased the Product to improve oral health and did not expect it would be formulated to negatively affect oral health by having a pH level which contributed to loss of dentin and higher incidences of caries.

58. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty and
Implied Warranty of Merchantability/Fitness for a Particular Purpose

59. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that it would improve oral health and not negatively affect oral health.

60. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

61. Defendant knew the product attributes that potential customers like Plaintiff were seeking, including dry mouth relief, increased saliva production and moisturizing, and developed its marketing and labeling to directly meet their needs and desires.

62. Defendant's records, upon information and belief, include studies about the market for dry mouth products, which is growing rapidly as the population ages.

63. This is because hundreds of medications have side effects of causing dry mouth symptoms, and as the population ages, they consume more medications.

64. The representations about the Product were conveyed in writing and promised it

would be defect-free, and Plaintiff understood this meant it would improve oral health and did not expect it would be formulated to negatively affect oral health.

65. Defendant's representations and/or omissions affirmed and promised that the Product would alleviate dry mouth and promote overall oral health improve oral health and not negatively affect oral health through contributing to dental erosion.

66. Defendant described the Product so Plaintiff believed that it would improve dry mouth symptoms and overall oral health and did not expect it would be formulated to negatively affect oral health, which became part of the basis of the bargain that it would conform to its affirmations and promises.

67. Defendant had a duty to disclose and/or provide non-deceptive promises, descriptions and marketing of the Product.

68. This duty is based on Defendant's outsized role in the market for OTC oral care products and custodian of the ACT brand, which has helped alleviate oral conditions for decades.

69. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

70. Plaintiff provided notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties through the filing of the Complaint.

71. At no time since that filing did Defendant attempt to resolve the issues raised by Plaintiff with respect to the Product's acidity, which is a purpose of the notice requirement.

72. 810 ILCS 5/2-607(3)(a) requires that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."

73. Plaintiff provided notice in accordance with 810 ILCS 5/2-607(3)(a) because within a reasonable time after he discovered the Product was formulated with a pH rendering it unsafe

and/or likely to contribute to erosion of tooth dentin, he notified Defendant through the filing of the Complaint.

74. Notice is not required because Defendant had actual knowledge of Product's pH level because it formulated and manufactured it, and its deleterious effects on oral health.

75. The pH level of consumable products is something that is regularly measured for reasons related to stability and shelf-life.

76. As a seller of products intended to alleviate symptoms of dry mouth, Defendant knew the absence of saliva is a significant cause of dental erosion, which has been known for decades in the study of oral care.

77. For decades, oral care specialists have known that a contributing factor to dental erosion is the presence of acidic substances.

78. Defendant had knowledge of the Product's potential for causing dental erosion based on these facts.

79. Defendant is a large seller of OTC oral care products, which upon information and belief, contains regulatory personnel who monitor the academic literature in areas related to oral care.

80. The Product did not conform to its affirmations of fact and promises due to Defendant's actions, which were the omissions and failure to disclose it was not safe for use due to its pH level and effect on tooth structure and dentin.

81. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it would improve oral health and did not expect it would be formulated to negatively

affect oral health.

82. The Product was not merchantable because Defendant had reason to know the particular purpose for which it was bought by Plaintiff, because he expected it would improve dry mouth conditions instead of contributing to a deterioration in oral health due to being formulated with a pH outside the range considered safe for oral moisturizers and he relied on its skill and judgment to select or furnish such suitable product.

Unjust Enrichment

83. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable attorney and expert fees; and
5. Other and further relief as the Court deems just and proper.

Dated: June 16, 2023

Respectfully submitted,

/s/ Spencer Sheehan

Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080

spencer@spencersheehan.com