IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOHAMAD TLAIB, individually ) <br> and on behalf of all others similarly situated, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHATTEM, INC., ) <br> ) <br> Defendant. ) | Case No. 23-CV-376 <br><br> Judge Robert W. Gettleman |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Mohamad Tlaib, on behalf of himself and other similarly situated individuals, brings this first amended complaint against defendant Chattem, Inc. for alleged violations of consumer protection law. Plaintiff asserts claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, as well as breaches of express warranty, implied warranty of merchantability and fitness for a particular purpose, and unjust enrichment. Defendant moves to dismiss plaintiff's first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 13). For the reasons stated below, the court grants defendant's motion.

## **BACKGROUND**

Defendant manufactures, labels, and sells dry mouth lozenges under the ACT brand, which plaintiff purchased from various pharmacies in Cook County. According to plaintiff, defendant manufactured the dry mouth lozenges for purchase and use by individuals affected by xerostomia, or hypofunction of the salivary glands. Plaintiff alleges that individuals with xerostomia are unable to produce saliva, which plays a "significant role in oral health," and the absence of saliva "significantly increases the risk of dental caries, demineralization, tooth

1

sensitivity, dental erosion, candidiasis, and other oral diseases."

Plaintiff alleges that defendant markets its ACT dry mouth lozenges ("the product") toward individuals suffering from xerostomia because the product's front label states that the lozenges "soothe[ ] dry mouth," "moisturize[ ] mouth tissue," and "freshen[ ] breath." On the label, the lozenges are pictured next to a splash of water. According to plaintiff, the product is intended to "linger in the mouth as long as possible to relieve dry mouth symptoms," and the lozenges stimulate saliva production, which "provides lubricating effects, increasing comfort and in theory, preventing dental erosion and caries." On its back label, the "suggested use" instructions state that consumers should "[u]se as needed." Plaintiff claims that he expected defendant's product to "improve the symptoms of dry mouth," and purchased the product "to improve oral health."

Plaintiff alleges, however, that laboratory testing shows that the product has a pH of 5.72,[1] which is "below the critical pH of tooth enamel and root dentin." He cites several academic studies that "highlight[ ] the dangers where the acidity level is not at roughly 6.7 pH or higher." Plaintiff complains that low pH values can indicate the immediate erosive potential of a solution, and defendant's lozenges are associated with a "dentin loss delta mean" of -0.0075, with a 0.004 standard deviation, which is similar to high-acidity products. Plaintiff further complains that instructing consumers to "use as needed" is "counter-intuitive" because the product is acidic, and the target group cannot dilute the product's pH with saliva. Plaintiff states that he "did not know or expect the Product's pH meant it contributed to demineralization, dental erosion, sensitivity, and caries."

Plaintiff alleges that the product's label is actionable because, "[i]n light of the Product's

---

[1] According to plaintiff, statistical analysis demonstrates that pH is correlated with titratable acidity (otherwise known as "TA").

acidity, it is misleading to market [the product] to individuals suffering from dry mouth because it will have a detrimental effect on oral health." Plaintiff explains that the product "fails to disclose and omits the likelihood of demineralization, dental erosion, greater tooth sensitivity and higher incidence of dental caries," and he did not expect the product to "be formulated to negatively affect oral health" based on its pH level. Instead, plaintiff claims that the product "expressly and impliedly warranted to plaintiff that it would improve oral health and not negatively affect oral health." He complains that defendant "had actual knowledge of Product's pH level because it formulated and manufactured it, and its deleterious effects on oral health," and "had knowledge of the Product's potential for causing dental erosion."

Further, plaintiff complains that the product "unlawfully claims to 'mitigate . . . disease" through its effects on salivary gland disorders using lay terminology, namely, "Moisturizes Mouth Tissue." He complains that he "paid more for the Product, would have paid less or not have purchased it had he known the representations and omissions were false and misleading." The product was sold for "not less than $6.99 per 36 lozenges, excluding tax and sales."

## LEGAL STANDARD

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), citing Fed. R. Civ. Pro. 12(b)(6). For a claim to have "facial plausibility," a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

3

Claims involving fraud, such as deception claims under the ICFA, are subject to a heightened pleading standard set forth in Rule 9(b). Fed. R. Civ. Pro. 9(b); Camasta v. Jos. A. Bank Clothiers, Inc., 761 F.3d 732, 736 (7th Cir. 2014). Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud." Fed. R. Civ. Pro. 9(b). The Seventh Circuit has interpreted the 9(b) standard to require a plaintiff to "describe[e] the who, what, when, where, and how of the fraud." Anchorbank, FSB v. Hofer, 649 F.3d 610, 615 (7th Cir. 2011).

## DISCUSSION

Plaintiff brings claims under Illinois state law, and as a federal court reviewing the case under diversity jurisdiction, this court evaluates plaintiff's claims pursuant to Illinois state law as the Illinois Supreme Court would review them. See Nationwide Agribusiness Ins. Co. v. Dugan, 810 F.3d 446, 450 (7th Cir. 2015).

The court begins by evaluating defendant's motion to dismiss plaintiff's claim for violation of the ICFA for misleading and deceptive practices.[2] According to defendant, plaintiff's ICFA theory fails to state a claim because he does not allege a misleading or deceptive statement on the product's label. Specifically, plaintiff does not allege that the product, which represents that it "soothes dry mouth," "moisturizes mouth tissue," and "freshens breath," failed to soothe his dry mouth, moisturize his mouth tissue, or freshen his breath. Further, assuming that defendant engaged in deception, plaintiff does not allege that a reasonable consumer would be misled or that defendant intended him to rely on its alleged deception.

To prevail on a claim under the ICFA, a plaintiff must show: (1) a deceptive act or

---

[2] The court agrees with defendant that plaintiff improperly attempts to recast his allegations in his response to defendant's motion by claiming that defendant engaged in unfair practices under the ICFA rather than deceptive practices. See Agnew v. Nat'l Collegiate Athletic Ass'n, 683 F.3d 328, 348 (7th Cir. 2012).

practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deceptive practice; (3) that the deceptive practice occurred during a course of conduct involving trade or commerce; (4) actual damage to the plaintiff; and (5) that the damage was the result of the defendant's deception. See De Bouse v. Bayer, 235 Ill.2d 544, 551 (2009). To successfully plead a claim that rests on allegations of deceptive conduct, a plaintiff must meet the heightened pleading burden under Rule 9(b). See Vanzant v. Hill's Pet Nutrition, Inc., 934 F.3d 730, 738 (7th Cir. 2019). Where the challenged representation is not misleading as a matter of law, the complaint is subject to dismissal at the pleading stage. See Bell v. Publix Super Markets, Inc., 982 F.3d 468, 482 (7th Cir. 2020).

In the instant case, the court agrees with defendant that plaintiff has not sufficiently alleged that defendant engaged in a deceptive act or practice. A practice is deceptive "if it creates a likelihood of deception or has the capacity to deceive." Bober v. Glaxo Wellcome PLC, 246 F.3d 934, 938 (7th Cir. 2001). Courts apply a "reasonable consumer" standard to examine the likelihood of deception. See Benson v. Fannie May Confections Brands, Inc., 944 F.3d 639, 646 (7th Cir. 2019). This standard requires a probability that a significant portion of the general consuming public or targeted consumers, acting reasonably under the circumstances, could be misled. See Bell, 982 F.3d at 474–75. Relevant circumstances include "all the information available to consumers and the context in which that information is provided and used." Id. at 477. "[W]here plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." Id.

Here, in his complaint, plaintiff does not identify a specific deceptive statement that a significant portion of targeted consumers would find false or misleading. Plaintiff's issue with

5

defendant's product is that its label does not include a pH level warning. Assuming, as the court must at this stage of litigation, that the product's lower pH level contributes to oral health issues like dental erosion, sensitivity, or caries, plaintiff has not pointed to any statement that the product has a favorable pH, or that its pH would positively impact consumers' overall oral health. Rather, as defendant argues, plaintiff relies on "his own baseless belief that the Product would improve his oral health" rather than manage dry mouth symptoms, and his allegation is that "the very act of marketing the Product to persons suffering from dry mouth is misleading."

Plaintiff's interpretation of the product's label is unreasonable under the circumstances, and the label is not deceptive as a matter of law. Other courts have rejected similar theories. See, e.g., Lesorgen v. Mondelez Glob., LLC, No. 3:22-CV-50375, 2023 WL 3568686, at *4 (N.D. Ill. May 19, 2023); Matthews v. Polar Corp., No. 22-CV-649, 2023 WL 4534543, at *6–8 (N.D. Ill. Mar. 22, 2023) (determining that plaintiffs "can't bring a misrepresentation claim about a representation that isn't there" because "[w]ithout a representation, there is no misrepresentation").

Moreover, other factors in this case support the court's conclusion. First, plaintiff does not allege that the product did not soothe his dry mouth, moisturize his mouth tissue, or freshen his breath, as defendant represents that the product is intended to do. The product does not expressly represent or imply that it will have a certain pH level, improve general "oral health," or treat xerostomia as a disease. At most, defendant represents that the product is intended to alleviate certain dry mouth symptoms, like other lozenges marketed to treat common cold symptoms, such as a sore throat, that do not cure or otherwise alleviate an underlying virus.

A representation about addressing symptoms is not the same as a statement about addressing the underlying disease. Plaintiff does not allege that the lozenges failed to treat his

dry mouth symptoms, and he provides no factual allegations to suggest that defendant intended to deceive plaintiff, or other consumers, with its representations on the product's label. It is not enough for plaintiff to allege that defendant's product misled him, one particular plaintiff. See Matthews, 2023 WL 4534543, at *6. Consequently, the court dismisses plaintiff's claim pursuant to the ICFA.

The court next considers plaintiff's other claims. As defendant argues, and the court in Gardner v. Ferrara Candy Co., No. 22-cv-1272, 2023 WL 4535906, at *7 (N.D. Ill. Mar. 22, 2023), explains, failure to sufficiently allege a deceptive act or practice is fatal to plaintiff's entire complaint, including his claims for breach of warranty and unjust enrichment. The court agrees with the court's reasoning in Gardner and, accordingly, dismisses plaintiff's other claims, which also fail for independent reasons.

For example, plaintiff's claim for breach of express warranty fails due to lack of pre-suit notice. Under Illinois law, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2-313(1)(a). To properly plead a claim for breach of express warranty, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a). Defendant argues that plaintiff's claim must be dismissed because plaintiff fails to allege that he provided defendant with pre-suit notice of any alleged breach of warranty before filing his original complaint. See Connick v. Suzuki Motor Co., 174 Ill.2d 482, 492 (1996).

There are certain exceptions to the pre-suit notice requirement, which plaintiff attempts to utilize. For example, direct notice is not required when the seller has actual knowledge of a

7

defect in a particular product. See id. Generalized knowledge is insufficient to establish actual knowledge for the purposes of the exception; instead, the plaintiff must allege that the defendant had actual knowledge of the alleged breach of the particular product purchased by the named plaintiffs in the lawsuit. See Kinman v. Kroger Co., No. 21 C 1154, 2022 WL 1720589, at *3 (N.D. Ill. May 27, 2022). In the instant case, plaintiff argues that defendant "had actual knowledge of Product's pH level because it formulated and manufactured it, and its deleterious effects on oral health," and "had knowledge of the Product's potential for causing dental erosion."

The court, however, agrees with defendant that this exception does not apply, and dismisses plaintiff's claim for breach of express warranty. What matters is not notice "of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that they constitute a breach." Connick, 174 Ill.2d at 494 (emphasis in original) (internal quotations omitted). Plaintiff's complaint itself is insufficient to satisfy the pre-suit notice requirement, especially in the instant case, which relies on plaintiff's allegations of an economic, rather than personal, injury. Id. at 495.

Plaintiff also fails to state a claim for breach of implied warranty of merchantability and fitness for a particular purpose because plaintiff has not alleged that he was in privity with defendant. Illinois law provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." 810 ILCS 5/2-314(1). Because defendant is the manufacturer, rather than an immediate seller, of the product, and because plaintiff has not alleged a direct relationship between defendant and the pharmacies that sold him the dry mouth lozenges, the court dismisses plaintiff's claim for implied warranty for lack of privity. See Gardner v. Ferrara Candy Co., No. 22-cv-1272, 2023

8

WL 4535906, at *8 (N.D. Ill. Mar. 22, 2023) (citing Rothe v. Maloney Cadillac, Inc., 518 N.E.2d 1028, 1029 (Ill. 1988)).

Last, the court grants defendant's motion to dismiss plaintiff's claim for unjust enrichment. Under Illinois law, "[u]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." Martis v. Grinnell Mut. Reins. Co., 388 Ill. App. 3d 1017, 1024 (2009). Because the court dismisses plaintiff's other claims, his claim for unjust enrichment must fail because it is predicated on these claims. See, e.g., Chiappetta v. Kellogg Sales Co., No. 21-cv-3545, 2022 WL 602505, at *9 (N.D. Ill. Mar. 1, 2022).

## CONCLUSION

For the reasons stated above, the court grants defendant's motion to dismiss plaintiff's first amended complaint (Doc. 13), with prejudice.

ENTER:

**Robert W. Gettleman**
**United States District Judge**

**DATE:** September 8, 2023